IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| HILARY NOLAND, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 10-2140-JWL |
| ENTERPRISE HOLDINGS, INC., et al | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

Plaintiff filed this suit against defendants alleging violations of the overtime provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq., based on defendants' alleged misclassification of plaintiff as an exempt employee for overtime purposes. This matter is presently before the court on defendant Enterprise Holding, Inc.'s motion to dismiss for lack of personal jurisdiction (doc. #13). For the reasons explained below, defendant Enterprise Holding Inc.'s motion is granted.

**I. Background**

Plaintiff filed this action against Enterprise Leasing Company of Kansas, LLC ("ERAC-Kansas") and its parent corporation, Enterprise Holdings, Inc. ("EHI"). ERAC-Kansas, a wholly owned subsidiary of EHI, is a Kansas corporation, with its principal place of business in Merriam, Kansas. EHI is a Missouri corporation, with its principal place of business in St. Louis, Missouri.

Prior to August 1st, 2009, Enterprise Holdings, Inc. was named Enterprise Rent-A-Car Company. Like Enterprise Holdings, Inc., Enterprise Rent-A-Car Company's principal place of business/headquarters was located at 600 Corporate Park Drive, St. Louis, Missouri. In August 2009, Enterprise Leasing Company of Kansas also underwent corporate changes. Enterprise Leasing Company of Kansas and Enterprise Leasing Company of Kansas, LLC merged into Enterprise Leasing Company of Kansas, LLC. Plaintiff claims that St. Louis, Missouri was also the principal place of business/headquarters of Enterprise Leasing Company of Kansas, prior to the merger, as ERAC-Kansas listed the St. Louis address as its principal place of business/headquarters on forms filed with the state of Missouri in 2007 and 2008.[1] *See, e.g.*, plaintiff's exhibit E. It is undisputed that EHI neither transacts business in Kansas nor has a registered agent in Kansas.

On May 6th, 2010, EHI moved to dismiss plaintiff's claims for lack of personal jurisdiction. However, on June 22nd, 2010, at EHI's request, this Court stayed plaintiff's case pending a final decision by a United States Judicial Panel on Multidistrict Litigation in the Western District of Pennsylvania concerning transfer of this matter (doc. #19). The parties notified this Court that the MDL Panel issued an order on August 9, 2010, vacating the conditional transfer order that it had entered (doc. #20). Consequently, the issue of whether this Court has jurisdiction over EHI is again before the Court.

---

[1] Enterprise Leasing Company of Kansas's prior address was in Clayton, Missouri. In fact, plaintiff was employed in Missouri.

## II. Discussion

Defendant EHI argues that plaintiff's action must be dismissed for lack of personal jurisdiction. The party bringing the action bears the burden of establishing personal jurisdiction over the defendant. *AST Sports Science Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008). However, when a pre-trial motion to dismiss is considered by the court without an evidentiary hearing, the plaintiff "need only make a prima facie showing of personal jurisdiction to defeat the motion." *Id.* at 1057 (citing *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998)). The plaintiff can satisfy this burden by "demonstrating, via affidavits or other written materials, facts that if true would support jurisdiction over the defendant." *Id.* In determining whether this necessary showing has been made, all factual disputes are resolved in the plaintiff's favor. If uncontroverted by the defendant's affidavits, the well-pled factual allegations in the complaint must be taken as true. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). Resolving all doubts in plaintiff's favor, the Court concludes that plaintiff has not met her burden of making a prima facie showing that defendant EHI is subject to the jurisdiction of this court.

The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant so long as the defendant purposefully established "minimum contacts" with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *accord AST Sports Science, Inc. v. CLF Distribution Ltd.,* 514 F.3d 1054, 1058 (10th Cir. 2008) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). This standard may be met in two ways. First, a court may exercise specific

jurisdiction if a defendant has "purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *AST Sports Science, Inc.,* 514 F.3d at 1058 (quoting *Burger King*, 471 U.S. at 472). Second, a court may exercise general jurisdiction if the defendant's contacts with the forum state, while unrelated to the alleged activities upon which the claims are based, are nonetheless "continuous and systematic." *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000). If the defendants have sufficient minimum contacts with the forum state, the Court must analyze whether the exercise of personal jurisdiction over the defendants would offend "traditional notions of fair play and substantial justice." *AST Sports Science, Inc.*, 514 F.3d at 1057 (quoting *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998)). As discussed below, the Court concludes that plaintiff's evidence regarding defendant EHI's contacts with Kansas is insufficient to permit the court to exercise either specific or general jurisdiction over defendants, and the Court therefore grants the motion of defendant EHI to dismiss the claims against it for lack of personal jurisdiction.

1. Specific Jurisdiction

In order to exercise specific jurisdiction over the defendants, the Court must find defendant EHI has "purposefully directed" its activities towards Kansas and that the litigation results from alleged injures that arise out of or relate to those activities. *Th Agric. & Nutrition, LLC v. Ace European Group Ltd.*, 488 F.3d 1282, 1287 (10th Cir. 2007) (citing *Burger King*, 471 U.S. at 472). EHI must have purposefully availed itself

4

"of the privilege of conducting activities within the forum State…" *AST Sports Science, Inc.*, 514 F.3d at 1057-58. The purposeful availment requirement serves the following functions: (1) it "assures a reasonable expectation in the out-of-state defendant that he might be brought into court in the state where he sought to do business and invokes the benefits and protections of the forum state's laws" and (2) it "ensures that a defendant will not be subject to the laws of a jurisdiction 'solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person.'" *Id.* (citing *Burger King,* 471 U.S. at 472 and *Benally v. Amon Carter Museum of Western Art*, 858 F.2d 618, 625 (10th Cir. 1988)).

Plaintiff does not explicitly assert that the Court has specific jurisdiction over EHI, but she does state that EHI has availed itself of the benefits and protections of the state of Kansas because 2007 and 2008 annual registration reports for Enterprise Leasing Company of Kansas (prior to the merger into ERAC-Kansas) listed its principal place of business/headquarters as being the same as EHI's St. Louis address. *See* plaintiff's exhibit E. Similarly, the corporate address was listed as ERAC's. However, plaintiff has not even asserted, let alone demonstrated, that her claim is related to EHI's alleged conduct in Kansas. There is no evidence that EHI was in charge of plaintiff's employment status, including her classification as an exempt employee. *See Russell v. Enterprise Rent-A-Car-Company of Rhode Island*, 160 F.Supp.2d 239, 250 (D.R.I. 2001). Indeed, Tony McKinnis, General Manager of ERAC-Kansas, stated in an affidavit that ERAC-Kansas is responsible for its own financial dealings, including processing of its own payroll. ERAC-Kansas does not comingle funds with EHI, and EHI does not pay

the wages of ERAC-Kansas employees. *See* affidavit of Tony McKinnis, defendant's exhibit B. Thus, plaintiff has not made a prima facie showing that the Court could exercise specific jurisdiction over EHI.

2. General Jurisdiction

The Court may exercise general jurisdiction over defendant EHI even if the alleged injury is unrelated to its contacts with the forum state if the unrelated contacts are "continuous and systematic" enough "that the defendant could reasonably anticipate being haled into court in that forum." *Trierweiler v. Croxton and Trench Holding Corp.*, 90 F.3d 1523, 1543 (10th Cir. 1996) (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). General jurisdiction may be exercised only if the nonresident has "a substantial amount of contacts with the forum state." *Trierweiler*, 90 F.3d at 1533 (citing 4 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1067, at 298 (2d ed. 1987)). Plaintiff asserts that this Court has general jurisdiction over EHI on two bases: (1) because the forms previously discussed listed the same principal place of business/headquarters for ERAC-Kansas and EHI; and (2) under an agency theory, given ERAC-Kansas's status as a wholly-owned subsidiary of EHI. In other words, plaintiff contends that EHI has continuous and systematic contacts with Kansas directly by means of a shared principal place of business/headquarters, or indirectly based upon an agency relationship with ERAC-Kansas.

"The existence of a parent-subsidiary relationship is insufficient by itself to establish personal jurisdiction over a parent who does not conduct business within the

6

state." *Snowden By and Through Victor v. Connaught Laboratories, Inc.*, 793 F.Supp. 1040, 1043 (D. Kan. 1992) (citing *Transure, Inc. v. Marsh and McLennan Inc.*, 766 F.2d 1297, 1299 (9th Cir. 1985)). *See also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n. 13, 104 S.Ct. 1473, 79 L.ed.2d 790 (1984) (explaining that the court must assess the parent's and subsidiary's contacts with the forum separately). "'[A] holding or parent company has a separate corporate existence and is treated separately from the subsidiary in the absence of circumstances justifying disregard of the corporate entity.'" *Benton v. Cameco Corp.*, 375 F.3d 1070, 1081 (10th Cir. 2004) (quoting *Quarles v. Fugua Indus., Inc.*, 504 F.2d 1358, 1362 (10th Cir. 1974)). *See also Good v. Fuji Fire & Marine, Ins. Co.*, 271 Fed.App'x 756, 759 (10th Cir. Mar. 27, 2008). A parent corporation may be subject to personal jurisdiction based upon the subsidiary's contacts with the state where the subsidiary "is the general agent or alter ego" of the parent. *Benton,* 375 F.3d at 1081. (finding no evidence that the subsidiary was the parent's general agent or alter ego). Plaintiff contends in part that ERAC-Kansas's contacts should be imputed to EHI under an agency theory.

The Tenth Circuit has explained that "a wholly owned subsidiary may be an agent and when its activities as an agent are of such a character as to amount to doing business of the parent, the parent is subjected to the in personam jurisdiction of the state in which the activities occurred." *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1278 (10th Cir. 2005) (quoting *Curtis Publ'g Co. v. Cassel*, 302 F.2d 132, 127 (10th Cir. 1962)). In assessing this, the Court must consider whether "the parent exercises sufficient control over the subsidiary." *See id*. (finding that the parent exercised "considerable control"

over the subsidiary, which acted as the parent's agent). *See also Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 459 (10th Cir. 1996) ("An agency relationship is 'the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. There can be no agency relationship unless the factual element of control is present.'") (citations omitted).

Plaintiff first asserts that EHI has sufficient contacts with Kansas because EHI and ERAC-Kansas's predecessor shared the same Missouri address for their principal places of business according to forms filed with the state. Plaintiff apparently assumes from this that the business ERAC-Kansas conducted at the time "was principally operated from EHI's headquarters." However, this does not demonstrate that EHI purposefully availed itself of the privilege of conducting activities *within Kansas*, *see AST Sports Science, Inc.*, 514 F.3d at 1057-58, but rather that ERAC-Kansas availed itself of the benefits of the laws of Missouri. Moreover, ERAC-Kansas's center of coordination and control is and has been in Kansas, not Missouri, despite the Missouri address listed on the official registration forms. John Lee, the Corporate Business Manager of EHI, stated in an affidavit that each subsidiary maintains its own headquarters and records, including ERAC-Kansas. Tony McKinnis stated that ERAC-Kansas's principal place of business since 2006 has been in Merriam, Kansas, and that "[e]ven though 600 Corporate Park Drive, St. Louis, Missouri is listed on registration papers in Missouri, the Merriam Headquarters is and has been the center of direction, control and coordination for ERAC-Kansas and its predecessor company, Enterprise Leasing Company of Kansas." Mr.

McKinnis also stated that ERAC-Kansas's principal place of business prior to 2006 was in Overland Park, and had been since October 1986. Thus, for all times relevant to plaintiff's complaint, the center of coordination and control for ERAC-Kansas has been in Kansas. The Court thus finds that personal jurisdiction cannot be exercised over EHI merely on this basis. *See also Cotracom Commodity Trading AG v. Seaboard Corp.*, 94 F.Supp.2d 1189, 1192 (D. Kan. 2000) (disregarding identical addresses when analyzing personal jurisdiction over a parent corporation under an "alter ego" theory).

Plaintiff also asserts that EHI may be subject to this Court's jurisdiction under an agency theory of general jurisdiction, based upon ERAC-Kansas's status as a subsidiary. As previously explained, the Court must consider the degree of control exercised over ERAC-Kansas by EHI. *See Pro Axess, Inc.,* 428 F.3d at 1278 and *Snowden,* 793 F.Supp. at 1043 ("the nature of the intercorporation relationship may be highly probative of the quality and nature of the nonresident's contacts. Thus, the degree and direction of control exerted by one corporation over the other and the flow of benefits from the forum state are all relevant in determining the nature of the relationship"). Plaintiff asserts that EHI's significant control over ERAC-Kansas is exhibited by the following: (1) EHI and ERAC-Kansas share some common officers[2] and, as previously discussed, shared a principal place of business according to documents filed with the state; (2) ERAC-Kansas takes direction from EHI concerning local operational goals; (3) EHI makes certain broad statements on its website, such as statements that *it* employs 68,000 employees and *it* has

---

[2] Defendant EHI concedes that Pamela Nicholson, William Snyder, David Lovin and Andrew Taylor are officers of EHI and managers or officers of ERAC-Kansas City.

over 1.1 million vehicles; (4) EHI's name appears on the paychecks issued to ERAC-Kansas employees as well as performance appraisals; (5) EHI is stated as the employer on plaintiff's COBRA forms; (6) EHI promulgates corporate wide policies through an Ethics Guide and Personnel Policies Summary and a Benefits Guide; and (7) EHI establishes the employee benefits program, including eligibility guidelines.

Although EHI and ERAC-Kansas share four officers, Tony McKinnis explained in his affidavit that EHI has a total of over 100 officers, and only those four in common. Moreover, this Court has previously declined to find jurisdiction on an agency theory where the parent and subsidiary shared just a few officers. See *Snowden,* 793 F.Supp. at 1043. EHI has presented evidence that ERAC-Kansas does not take any direction from EHI either for regular business matters or employment decisions or concerns. Each subsidiary decides where and when it will open branch locations, how many vehicles to purchase, which and how many employees to hire, the hours of operation, and to whom vehicles will be rented. Each subsidiary also has ultimate authority concerning personnel policies, such as hiring, firing, and compensation of employees. ERAC-Kansas pays for its own vehicles and office equipment and supplies, rents its own office space, maintains separate bank accounts, and processes its own payroll. ERAC-Kansas and EHI do not comingle funds, and EHI does not pay the salaries of ERAC-Kansas employees. ERAC-Kansas has its own human resources and accounting departments, and solely issues paychecks to employees, including to plaintiff. Although EHI does distribute the Ethics Guide and Personnel Policies Summary and Benefits Guide, Mr. McKinnis stated in his affidavit that the policies in the Best Practices Guide "are suggested best practices and

recommendations by EHI to the operating subsidiaries" and ERAC-Kansas has the discretion to accept or reject them. ERAC-Kansas also may decide which benefits to offer to employees, despite EHI's issuance of a benefits guide. *See King v. Enterprise Rent-A-Car-Company,* No. 03-71778, at 7-9 (E.D. Michigan Feb. 9, 2005) (concluding that Enterprise Rent-A-Car Company was not subject to personal jurisdiction in Michigan based upon its relationship with its Michigan subsidiary, despite shared officers and directors and Enterprise's distribution of the Best Practices and Benefits guides, among other things). *See also Russell,* 160 F.Supp.2d at 251 (finding no basis for personal jurisdiction over Enterprise Rent-A-Car Company based upon the existence of an agency relationship with its Rhode Island subsidiary, and noting that it would not pierce the corporate veil based upon ownership of the subsidiary and common board members). ERAC-Kansas and EHI also observe corporate formalities and are distinct business entities.[3]

Moreover, while EHI does make sweeping statements on its website concerning the scope of its nation-wide operations, such statements are insufficient to establish that EHI has actual control over each of its subsidiaries, including ERAC-Kansas. The exercise of personal jurisdiction on such a basis would necessitate disregarding the well-established rule that a nonresident parent corporation may not be subjected to personal jurisdiction merely because of the parent-subsidiary relationship. *See Curtis Publ'g Co.,*

---

[3] In *Snowden*, the court noted that there was no evidence the subsidiary was undercapitalized or that the parent paid the salaries of the subsidiary. See *Snowden,* 793 F.Supp. at 1043. The subsidiary and parent corporations also kept separate bank accounts and separate financial records, and had their own accounting and payroll systems. *Id.* The same is true of EHI and ERAC-Kansas.

302 F.2d at 127. While EHI's logo may appear on the paychecks of ERAC-Kansas employees, ERAC-Kansas is solely in charge of payroll and employee salaries. Similarly, EHI's logo appearing on employee performance appraisals does not negate the fact that EHI is exclusively in charge of hiring, firing, and disciplining its employees. As EHI points out, plaintiff's COBRA forms were filled-out by an independent third party (CONEXIS), and that party listing EHI as plaintiff's "employer" cannot actually demonstrate any control by EHI over ERAC-Kansas. Moreover, in light of the previously discussed evidence EHI presented concerning ERAC-Kansas's own control over business decisions, its daily operations, and employee matters, the use of EHI's corporate address on registration forms filed by ERAC-Kansas is not sufficient to overcome the presumption that the parent and subsidiary are separate entities. *See Benton,* 375 F.3d at 1081 and *Cotracom,* 94 F.Supp.2d at 1192. *See also King*, No. 03-71778 at 9 (noting under similar facts that the evidence "overwhelming" showed Enterprise and its subsidiary were separate and distinct entities, rejecting an agency theory, among others). Thus, the Court cannot impute to EHI the contacts that ERAC-Kansas has with Kansas.

The record therefore fails to establish that EHI had continuous or systematic contacts with Kansas, either directly or through an agent. Therefore, the exercise of general jurisdiction is not appropriate. The Court therefore grants defendant EHI's motion to dismiss for lack of personal jurisdiction.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant Enterprise Holding, Inc's motion to dismiss for lack of personal jurisdiction (doc. #13) is **granted**.

**IT IS SO ORDERED.**

Dated this 16th day of August, 2010, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge
